UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| U.S. AUTOMATIC SPRINKLER CO., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-944- SEB-TAB |
| | ) | |
| THE RELIABLE AUTOMATIC SPRINKLER | ) | |
| CO., FERGUSON FIRE & FABRICATION, | ) | |
| INC., f/k/a THE CLARK GROUP, INC., | ) | |
|     Defendants. | ) | |

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. Introduction.**

One obvious risk involved in installing an indoor fire protection sprinkler system is that it might leak. As misfortune would have it, U.S. Automatic Sprinkler Co. ("U.S. Automatic") installed just such a sprinkler system. The issue presently before the Court is whether U.S. Automatic should be barred from raising its warranty claims against Defendant Ferguson Fire & Fabrication, Inc. ("Ferguson"), based upon Indiana Trial Rule 13(A) or the doctrine of res judicata. For the reasons set forth below, the Magistrate Judge finds these arguments are unsupported by the record and recommends Ferguson's motion for summary judgment be denied. [Docket Nos. 15, 43.][1]

---

[1] Ferguson originally filed a motion for judgment on the pleadings [Docket No. 15], which the Court converted to a motion for summary judgment. [Docket No. 43.]

**II. Background.**[2]

In August 2003, U.S. Automatic installed a large fire protection sprinkler system as part of a project in Greenwood, Indiana, known as "the Quadrangle Project." [Docket No. 34, Aff. R. Bruce Agan, at ¶ 4.] After the installation, the system had a high number of small leaks between the sprinkler heads and the tee-let female outlets. [*Id.* at ¶ 11.] U.S. Automatic tried to fix the leaks by reapplying pipe compound to the sprinkler heads, but doing so did not completely resolve the problem. [*Id.* at ¶ 12.] Between July and September of 2004, U.S. Automatic did a full-scale repair of the sprinklers at its own expense. [*Id.* at ¶ 32.]

U.S. Automatic purchased the tee-let pipe assemblies for the Quadrangle Project from The Clark Group, Inc., with whom it had a credit account going back to November 2001. [Docket No. 17, Ex. F at 6-8, Aff. Cynthia Powell at ¶ 11-12.] An agreement between U.S. Automatic and Clark Group dated May 25, 2004, pertaining to "REFERENCE NO: 138100-04" (with "Quadrangle Job" in print next to the number), indicates that Clark Group would accept payment from U.S. Automatic in the amount of $68,488.20 "as full and complete settlement of the current balance owed on the above referenced account number," and that "[f]ull payment is to be made no later than July 10, 2004." [Docket No. 17, Ex. A, at 6.] U.S. Automatic's records indicate that it issued a check to Clark Group on June 2, 2004, for $213,782.25, about a third of

---

[2] The facts are viewed and inferences drawn in favor of the non-moving party for this summary judgment motion. *Metro Life Ins. Co. v. Johnson*, 297 F.3d 558, 561-62 (7th Cir. 2002). "Summary judgment is proper when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *See Mote v. AETNA Life Ins. Co.*, 502 F.3d 601, 606 (7th Cir. 2007) (quoting *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004) and Federal Rule of Civil Procedure 56(c)).

which U.S. Automatic's records showed was applied to the Quadrangle Project. [Docket No. 34, Agan Aff., Ex. 4.] Furthermore, according to U.S. Automatic President Bruce Agan: "It was my understanding at the time I signed the [May 25, 2004] note that the $68,488.20 was an amount which Clark and U.S. Automatic were agreeing U.S. Automatic would owe on the credit account as a whole after U.S. Automatic agreed to send Clark a check for approximately $214,000.00." [Docket No. 34, Agan Aff., at ¶ 13.]

Agan sent a June 28, 2004, letter to Bob Clark of Clark Group detailing the problems U.S. Automatic was having with the sprinkler system and requested that the July 10, 2004, payment deadline for "obligation reference number 138100-04" be extended to September 10, 2004. [Docket No. 17, Ex. F, at 10-11.]  On July 7, 2004, Agan emailed Clark requesting a response to the June 28 correspondence. [Docket No. 17, Ex. I, at 30.]  Clark responded that because Anvil—which Clark Group had hired to test the tee-let assemblies—concluded there was no evidence of leakage by the tee-let assemblies, Clark Group's "position has not changed." [*Id.*]  On November 22, 2004, Ferguson acquired Clark Group. [Docket No. 17, Ex. G, at ¶ 4.]

In December of 2004, George Langford, the principal consultant of Amenex Associates, Inc., was hired to test the sprinkler heads to determine whether they were defective. [Docket No. 34, Aff. George Langford, at ¶ 3.]  At that time, Langford did not test the tee-let assemblies, but Langford did review the Anvil report and concluded that the tests Anvil had conducted "did not reliably eliminate the tee-let assemblies as a possible cause or contributing factor of the connection leaks." [*Id.* ¶ 4-5.]

On January 14, 2005, Agan sent a letter to Ross Maxwell of Clark Group/Ferguson putting it on notice that U.S. Automatic believed that the tee-let assemblies were defective and

3

requesting it pay U.S. Automatic $206,000 in damages. [Docket No. 17, Ex. F, at 12.] On April 4, 2005, Ferguson filed a complaint against U.S. Automatic in the Hamilton Superior Court for breach of contract and unjust enrichment for failing to pay for goods, at which time U.S. Automatic's account balance with Ferguson was $36,528.81. [Docket No. 17, Ex. A.] In its amended answer, U.S. Automatic raised several defenses, including that U.S. Automatic was entitled to set-off damages. [Docket No. 17, Ex. B, at 4-5.]

Ferguson filed a motion for summary judgment on March 21, 2006, in which it argued prospectively that U.S. Automatic's claim that the tee-let assemblies caused the sprinkler system leakage was not supported by the evidence. [Docket No. 17, Exs. C-D.] Also in March of 2006, U.S. Automatic retained Langford to conduct a second round of testing, [Docket No. 34, Langford Aff., at ¶ 6], and shortly thereafter filed a motion for an enlargement of time, which the court granted over Ferguson's objection. [Docket No. 17, Ex. T, at 4.] U.S. Automatic filed its response to the motion for summary judgment on May 22, 2006, arguing that summary judgment was not proper because material facts remained in dispute as it was conducting on-going testing to determine whether the tee-let assemblies breached an implied warranty of merchantability. [Docket No. 17, Ex. I.]

Langford's second round of testing ended July 31, 2006, the results of which were again inconclusive. [Docket No. 34, Langford Aff., at ¶ 7.] In September 2006, Langford began a third round of testing, which continued until the end of the year. [*Id*. at ¶ 8.] The state court held a hearing on the motion for summary judgment on November 1, 2006. [Docket No. 17, Ex. T, at 5.] The court granted Ferguson's motion for summary judgment on December 1, 2006, without written explanation, awarding Ferguson $36,528.81 plus prejudgment interest and

4

attorney fees. [Docket No. 17, Ex. O.] Langford completed his third round of testing and issued his report in January 2007, concluding that the tee-let/pipe assemblies contributed to the leaks in the sprinkler system. [Docket No. 34, Langford Aff., at ¶ 8.]

Armed with this new information, on January 18, 2007, U.S. Automatic filed a motion to set aside judgment and leave to file a counterclaim. [Docket No. 17, Ex. T, at 5.] The Hamilton Superior Court held a hearing on the matter on February 7, 2007, and on March 22, 2007, the court denied U.S. Automatic's motion to set aside judgment and file a counterclaim, and awarded Ferguson attorney fees and expenses. [*Id*. at 6.] In its March 22, 2007, order, the Hamilton Superior Court explained:

> Defendant failed to advise any reason why [the testing of the tee-let/pipe assemblies] was not conducted earlier. Defendant also failed to advise the Court why a request for extension of time was not filed so that the Defendant could conduct such additional testing before responding to Plaintiff's Motion for Summary Judgment. At no time did the Defendant request a continuance of the above-stated summary judgment hearing so that any additional testing could be completed. Finally, the Defendant has failed to provide the Court with any justification of why such trial rule procedures were not followed in this matter.

[Docket No. 17, Ex. R, at 1-2.]

U.S. Automatic filed the case at bar against Ferguson and Reliable Automatic Sprinkler Co. Inc. ("RASCO") on June 21, 2007. U.S. Automatic claims the pipe provided by Ferguson and the sprinklers provided by RASCO both "contained latent defects and breached the sales contract because the goods were neither of merchantable quality nor fit for the particular purpose for which they were purchased." [Docket No. 1, Complaint at ¶ 34.] Ferguson filed a motion for judgment on the pleadings in August of 2007 (which the Court converted to a motion for summary judgment) arguing that the March 22, 2007, judgment entered in the Hamilton Superior

Court precludes the present case because of Indiana Trial Rule 13 and res judicata. [Docket Nos. 15, 43.]

**III.    Discussion.**

*A.  The Affidavits*

As a preliminary matter, Ferguson argues that the affidavits of Bruce Agan and George Langford should not be considered by the Court because "they express inadmissible opinion that U.S. Automatic allegedly had no 'reliable evidence'" at the time of the prior action. [Docket No. 48 at 1.] In his affidavit, Bruce Agan states: "It was not until Mr. Langford's final report in January of 2007 that U.S. Automatic had any reliable evidence with which to base a claim against the person or persons responsible for the tee-let/pipe assemblies." [Docket No. 34, Aff. Agan, at ¶ 40.] In this litigation any number of causes could be responsible for the leakage. Ferguson's expert report stated that there was "no evidence of leakage" associated with the tee-let assemblies [Docket No. 17, Ex. D, at 5], and U.S. Automatic's first two rounds of expert tests were inconclusive. Given these facts, Agan's reference to no "reliable evidence" is a logical inference that prior to January 2007, U.S. Automatic had no proof to conclude that Ferguson was to blame for the leaks. Determining that there is weak or no proof to support a possible claim does not necessarily require the opining of an expert. *See* Rule 701 ("[T]he witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness . . . ."). Agan's opinion in this case was certainly a perception rationally based on the facts.

As for Langford's affidavit, U.S. Automatic argues that Langford's use of "reliable evidence" should be read to mean "reliable scientific evidence." [Docket No. 42 at 8.] Ferguson

maintains, however, that Langford's affidavit should not be considered expert testimony because it "fails to present even the basics required under Fed. R. Civ. P. 26(a)(2)." [Docket No. 48 at 3.] It should come as no surprise to either Ferguson or the Court that U.S. Automatic is using Langford as its expert witness in this case. Ferguson's own filings include an affidavit by Langford, his curriculum vitae, and his complete report as part of U.S. Automatic's unsuccessful request to set aside judgment and add counterclaims in the prior litigation. [*See* Docket No. 17, Ex. P.] This information also establishes Langford's basis as an expert on the claims in this case, which are identical to the counterclaims U.S. Automatic was not allowed to raise in the previous action. Therefore, U.S. Automatic's reliance on Langford's affidavit also is permissible.

*B. Compulsory Counterclaim & Res Judicata*

The parties dispute whether U.S. Automatic's warranty claims against Ferguson should be barred based on Indiana Trial Rule 13(A) or on principles of res judicata. Jurisdiction in this case rests on diversity, so state law determines these issues. *See Jarrard v. CDI Telecomms., Inc.*, 408 F.3d 905, 916 (7th Cir. 2005); *McKnight v. Dean*, 270 F.3d 513, 518 (7th Cir. 2001).

Indiana Trial Rule 13(A) states that a compulsory counterclaim is a claim that "arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." A permissive counterclaim, on the other hand, is "any claim against an opposing party not arising out of the transaction or occurrence that is the subject-matter of the opposing party's claim." Ind. Trial Rule 13(B). "If a claim is not mature at the time an answer is filed it cannot be a compulsory counterclaim but is, at most, a permissive counterclaim." *Indiana & Michigan Elec. Co. v. Terre Haute Indus., Inc.*, 467 N.E.2d 37, 41 (Ind. Ct. App. 1984).

Ferguson argues that U.S. Automatic's warranty claims against it should have been raised in the prior proceeding as a compulsory counterclaim, arguing that the Hamilton Superior Court treated such claims as compulsory; that these claims were raised in the pleadings as set-off defenses so are therefore mature; and that these claims arise from the same transaction or occurrence as the claims litigated in the prior action.  U.S. Automatic contends the breach of contract and unjust enrichment claims were based on different purchases than the warranty claims, and that its warranty claims are not compulsory but rather permissive as to the prior action.  U.S. Automatic also argues that its warranty claims were not mature at the time it was required to plead in response to Ferguson's complaint in the prior action.

In the prior suit, the Hamilton Superior Court denied U.S. Automatic's request to file counterclaims after summary judgment was entered in the prior action explaining it "would be in contradiction to the judgment that has already been entered." [Docket No. 17, Ex. R, at ¶ 2.] Ferguson suggests this statement means that the Hamilton Superior Court considered those claims to be compulsory.  However, it is clear that *any* counterclaim (compulsory or permissive) filed after the court entered summary judgment—which "resolved all issues in this cause except for attorney fees," [*Id*.]—would be in contradiction to that summary judgment entry.  Thus, this explanation by the Hamilton Superior Court does not indicate any belief on its part that U.S. Automatic's current claims were compulsory rather than permissive counterclaims as to the prior action.

The facts, which are to be construed in favor of U.S. Automatic as the non-moving party, are at least in dispute as to whether the claims in the case at bar were part of the same transaction or occurrence as the breach of contract claim in the prior action.  The May 25, 2004, agreement

8

indicates that U.S. Automatic was to pay in full the amount owed to Clark Group/Ferguson for parts purchased for the Quadrangle Project by July 10, 2004. U.S. Automatic paid Ferguson approximately $214,000 on June 2, 2004, which U.S. Automatic's records indicate cover the Quadrangle Project, leaving other purchases left unpaid. Ferguson has provided no evidence indicating the application of the funds should be otherwise. However, whether U.S. Automatic truly meant to apply the funds this way is called into question by Bruce Agan's June 28, 2004, letter to Bob Clark requesting an extension of time for payment of obligation reference number 138100-04 (the number that evidence suggests is associated with the Quadrangle Project). On the other hand, the amount Ferguson sought and obtained for its breach of contract claim ($36,528.81 plus interest and attorney fees) is clearly a different amount than is in controversy in this case, which exceeds $75,000. Ferguson cannot lump all transactions and any claims arising between it and U.S. Automatic from those transactions— beginning as far back as 2001—as part of the "transaction or occurrence" for which Ferguson sought payment from U.S. Automatic on the account. Even though the Quadrangle Project was discussed in the prior litigation, the present claims regarding the Quadrangle Project materials are not clearly the same transaction or occurrence as that litigated in the prior action. Viewing the facts in favor of U.S. Automatic, the discussion about the Quadrangle Project could simply be pertaining to an undeveloped set-off defense.

      Moreover, the evidence suggests that U.S. Automatic's warranty claims against Ferguson were not mature during the first litigation. Ferguson contends that by sending to Ferguson the January 14, 2005, letter demanding $206,000, U.S. Automatic indicated that it had a mature claim at that time. Ferguson further argues that "mature" is another word for "accrue"

9

and that, according to the Indiana U.C.C., a cause of action "accrues" when the breach occurs. [Docket No. 40 at 14 (citing *Berkemeier v. Rushville Nat'l Bank*, 459 N.E.2d 1194, 1198-99 (Ind. Ct. App. 1984) and Indiana Code § 26-1-2-725(2)).]  Ferguson also points to *Kahn v. Cundiff*, 543 N.E.2d 627, 629 (Ind. 1989), in which the Indiana Supreme Court made clear that commencing an action in order to investigate is acceptable, unlike continuing the litigation of a groundless action.  Ferguson argues that because U.S. Automatic pled the set-off defense, it was certainly able to file it as a counterclaim without violating Rule 11.  Finally, Ferguson argues that U.S. Automatic was required to assert its set-off defense because "a defendant must assert all defenses which he has, and judgment for plaintiff is conclusive as to such defenses, whether pleaded or not." [Docket No. 40 at 19 (quoting *Lear Res. Inc. v. Uland*, 485 N.E.2d 134, 137 (Ind. Ct. App. 1985)).]

   These arguments are enticing but ultimately unconvincing, primarily because the assumptions and technicalities on which they are based are not applicable in the context of the concepts and goals of Indiana Trial Rule 13 and res judicata.  First, while the demand letter U.S. Automatic sent Ferguson indicates that U.S. Automatic suspected it might have a claim, it by no means demonstrates that this claim was mature for filing.  Likewise, while the Indiana U.C.C. specifies in its statute of limitations provision that a claim will "accrue" at the time of a breach, there is no indication that Indiana courts intend to incorporate that specific definition into the common law understanding of "mature" as it pertains to Trial Rule 13 counterclaims.

   And while the Indiana Supreme Court determined that simply filing a cause of action in order to investigate would not likely result in the award of attorneys fees in civil actions based on Indiana Code § 34-1-32-1 (Burns 1986), this does not mean that a party should feel compelled

to file such an action without some clear evidence to support the claim. U.S. Automatic's decision to plead the affirmative set-off defense rather than a counterclaim is understandable. Filing an affirmative defense—which requires no response, does not need to be resolved by the court, and only allows the defendant to recover (or set off) up to the amount filed against it in the complaint—can, as a practical matter, be pleaded based on less evidence than a counterclaim without being considered frivolous or wasteful of the court's time and resources. While U.S. Automatic suspected that something was wrong with the pipe Ferguson provided it, all of U.S. Automatic's tests were inconclusive and Ferguson's test indicated there were no problems with the pipe. If, hypothetically, U.S. Automatic had filed the counterclaim, had asked for another extension of time (which certainly would have drawn another objection), and if the third round of testing had been unfavorable to U.S. Automatic, the scenario would look much more like what the Indiana Supreme Court in *Kahn* had discouraged—continuing the litigation of a groundless action.

Finally, Ferguson's contention that U.S. Automatic was required to plead all defenses, even permissive counterclaims that might also be considered defenses, is misplaced. If this were true, then every permissive counterclaim that could potentially set off a claim would effectively be a compulsory counterclaim.

U.S. Automatic was clear in its position that it was not yet ready to make a claim against Ferguson at the time it was required to file its answer.[3] Other than a hunch, U.S. Automatic was

---

[3] In its response to Ferguson's motion for summary judgment, U.S. Automatic states:

> Because Ferguson has chosen to institute an action against [U.S. Automatic], though, this is not to say [U.S. Automatic] intends to delay pursuing any claim it may have. Rather, at this time, [U.S. Automatic] has set up the possibility that

11

essentially unable to obtain any evidence on which to base a claim against Ferguson, nor did U.S. Automatic file one against Ferguson, at that time.  In fairness, U.S. Automatic's claims cannot be characterized as compulsory counterclaims as they were not mature at the time U.S. Automatic was required to file its answer.

But Ferguson also argues that U.S. Automatic's claim is barred by res judicata.  The doctrine of res judicata—the purpose of which is to prevent repetition litigation—is divided into two branches: claim preclusion and issue preclusion.  Claim preclusion is applicable "where a final judgment on the merits has been rendered and acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies."  *Afolabi v. Atl. Mortg. & Inv. Corp.*, 849 N.E.2d 1170, 1173 (Ind. Ct. App. 2006).  When it does apply, "all matters that were or might have been litigated are deemed conclusively decided by the judgment in the prior action."  *Id*.  In determining whether claim preclusion should apply, "it is helpful to inquire whether identical evidence will support the issues involved in both actions."  *Id*.  A claim is barred under the doctrine of res judicata if the following elements are met:

> (1) the former judgment must have been rendered by a court of competent jurisdiction;
> (2) the former judgment must have been rendered on the merits;
> (3) the matter now in issue was, or could have been, determined in the prior action; and

---

Ferguson has breached its warranty of merchantability to [U.S. Automatic] in this transaction by including an affirmative defense as a set-off.  Rather than speculate that the tee-let/pipe assembly supplied by Ferguson was the cause of the connection leaks and filing a premature counterclaim, [U.S. Automatic] has chosen to await the results of Amenex's findings before casting such aspersions toward Ferguson.

[Docket No. 17, Ex. I, at 16.]

>   (4) the controversy adjudicated in the prior action must have been between the same parties to the present suit or their privies.

*Richter v. Asbestos Insulating & Roofing*, 790 N.E.2d 1000, 1002 (Ind. Ct. App. 2003) (quoting *Small v. Centocor*, 731 N.E. 2d 22, 26 (Ind. Ct. App. 2000)).

Issue preclusion bars relitigation of an issue or fact necessarily adjudicated in a prior litigation between the same parties or their privies, even if the two actions are on different claims. *Afolabi*, 849 N.E.2d at 1175. Where issue preclusion applies, the previous judgment is conclusive only as to those issues actually litigated and determined therein. *Id*. The two-part test for determining whether issue preclusion should be used is: "(1) whether the party in the prior action had a full and fair opportunity to litigate the issue and (2) whether it is otherwise unfair to apply collateral estoppel given the facts of the particular case." *Id*. at 1175-76.

Ferguson argues claim preclusion applies and that all four factors are met to bar U.S. Automatic's product defect claims. [Docket No. 16 at 13-15.] U.S. Automatic, on the other hand, argues that because identical evidence does not support the issues in both actions, only issue preclusion potentially applies.

Some of the issues and evidence argued in the motion for summary judgment and response thereto in the prior action may be necessary to adjudicate the present case. But while that evidence was raised, the Hamilton Superior Court did not address it, having made no findings of fact in its order granting summary judgment to Ferguson. The most logical explanation of this lack of findings of fact is that the Hamilton Superior Court ruled on the very straightforward breach of contract claim before it, which really required nothing more than a legal conclusion, and the court understandably disregarded the factually undeveloped set-off defense since U.S. Automatic alleged no evidence and failed to file a second motion for

13

extension of time. The Hamilton Superior Court did not need the evidence regarding the warranty of goods issues, nor did it likely consider it, when reaching its decision on the breach of contract claim. Thus, while issues associated with U.S. Automatic's warranty claims may have been raised in the prior litigation, the evidence pertaining to them was not necessary, nor probably even considered, in the adjudication of the claims in the prior action, so it would be inappropriate at the summary judgment stage to hold that claim preclusion bars U.S. Automatic's claim against Ferguson.

Thus, the question is whether U.S. Automatic has already had a full and fair opportunity to litigate the issues surrounding its current warranty claims and whether it is otherwise unfair to apply collateral estoppel given the facts of this case. It is true that the warranty claims were raised in the motion for summary judgment and response thereto, and that U.S. Automatic could have filed another motion for extension of time in order to flesh out its evidence. On the other hand, Ferguson was the first to raise these issues in the prior litigation in its motion for summary judgment (other than the very general set-off defense pled by U.S. Automatic), and it is unclear whether U.S. Automatic would have otherwise done so at that time. Also, U.S. Automatic had already filed one motion for extension of time, over Ferguson's objection, and was most likely itself doubting whether it had a claim based on the testing already conducted. Given the particular facts of these two cases and how the evidence unfolded, applying collateral estoppel would be unfair in these circumstances.

Finality and fairness are both important goals of the doctrine of res judicata, but when there is an apparent conflict between these two goals, fairness is to be chosen without hesitation. *State v. Huffman*, 643 N.E.2d 899, 901 (Ind. 1994); *Wedel v. Am. Elec. Power Serv. Corp.*, 845

N.E.2d 170, 171 n.2 (Ind. Ct. App. 2006). The sequence of events suggests that, as a practical matter, U.S. Automatic did not have an adequate opportunity to litigate its claims in the prior proceeding. Thus, as a matter of fairness, U.S. Automatic should be given the opportunity to do so.

## IV. Conclusion

For the reasons set forth above, the Magistrate Judge recommends that Defendant's motion for summary judgment [Docket Nos. 15, 43] be denied. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1), and failure to file timely objections within the ten days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  February 15, 2008

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Offer Korin
KATZ & KORIN
okorin@katzkorin.com

Nicholas Ward Levi
KIGHTLINGER & GRAY
nlevi@k-glaw.com

John D. Meyer
GOODIN ORZESKE & BLACKWELL, P.C.
jmeyer@goblaw.com

Donald Orzeske
GOODIN ORZESKE & BLACKWELL, P.C.
dorzeske@goblaw.com

James William Roehrdanz
KIGHTLINGER & GRAY
jroehrdanz@k-glaw.com

Ronald George Sentman
KATZ & KORIN
rsentman@katzkorin.com